PROUT (UNITED STATES v.). See Cases Nos. 16,093 and 16,094.

## Case No. 11,446.

### PROUTY et al. v. DRAPER et al.

[1 Story, 568; [1] 2 Robb, Pat. Cas. 75.]

Circuit Court, D. Massachusetts. Oct. Term, 1841.[2]

PATENTS—COMBINATION—INFRINGEMENT.

Where the plaintiff claimed the combination of three things, as his invention, in a patent for an improvement in the construction of ploughs; it was *held*, that the patent was for the entire combination of the three, and not for a combination of any two of them; and, therefore, it was no infringement of the patent to construct ploughs containing two of them.

[Cited in brief in Tillotson v. Ramsay, 51 Vt. 312.]

This was an action on the case for the infringement, by the defendants [Draper, Ruggles & Co.], of a patent of the plaintiffs [David Prouty & Co.], for "a new and useful improvement in the construction of the plough." The defendants pleaded the general issue; and also filed a specification of special matters of defence under the patent act of July 4th, 1836, c. 357 [5 Stat. 117].

At the trial, various questions, both of law and fact, were made by the defendants, under their different specifications of matters of defence; but the cause finally went off upon a question of law, arising upon the construction of the specification of the patent. The patent was dated the 4th of March, 1836. The specification was as follows:

"Be it known, that we, the said Prouty and Mears, have jointly invented, made, and applied to use a new and useful improvement in the construction of the plough, which invention and improvement we describe and specify as follows, viz.: Heretofore, the standard and landside of the plough has been placed perpendicular to, and at right angles with, the plane of the share. On this standard the beam has been placed

---

[1] [Reported by William W. Story, Esq.]

[2] [Affirmed in 16 Pet. (41 U. S.) 336.]

in such a manner, as to form an acute angle with the landside, of such extent as to place that part of the beam, to which the moving power is applied, at the distance of three or more inches from an extended line of the landside to the right, while the after part of the beam extends one or more inches to the left of the perpendicular of the landside near the handle. The object has been to cause the plough 'to run to land,' or hold its width of furrow; the effect produced has been an uneasy, struggling motion, as it meets resistance at the point, wing, or heel. We make our ploughs with the standard and landside forming an acute angle with the plane of the share, the standard inclining to the right or furrow side, in such manner as to enable us to place the centre of the beam on a line parallel with the landside, the fore part thereof at such distance from the extended line aforesaid, as to cause the plough to hold its width of furrow, and the after part falling within the perpendicular of the landside of the plough, the centre of it being nearly perpendicular to the centre of resistance on the mould-board; which we conceive to be at about one fourth part of the lateral distance from the landside to the wing of the share, and at about one third part of the perpendicular height from the plane of the share to the upper edge of the mouldboard. This location of the centre of resistance, we base on the fact, that many ploughs, which have been used in sharp, sandy soils, have been worn quite through at that point. The result of this formation of the plough, is a steady, well-balanced motion, requiring less power of draft, and less effort in directing the plough in its course. The inclination of the standard and landside, causes the plough to cut under and take up the furrow in the form of an oblique-angled parallelogram, or like a board feather-edged, which, being turned over, falls in level with the last furrow more readily than the right angled or square edged work. The coulter or knife, having a similar inclination, cuts the roots of the grass, &c. and leaves all vegetable matter on the surface, at a greater distance from the under edge of the furrow, which, being turned over, more readily falls in, and is far better covered than with square edged work. The top of the standard, through which the bolt passes to secure the beam, is transversely parallel to the plane of the share, and extends back from the bolt to such a distance, as to form a brace to the beam, where the after part is pressed down by lifting at the forepart, the share being fast under a rock, or other obstruction. The after part of this extension is squared in such manner, that, being jogged into the beam, it relieves the bolt in heavy draft. The bolts, which we use to fasten the pieces of cast iron, (of which our ploughs are made) together and to the woodwork, are round, with inverted convex heads, or like the woodscrew, with a projection on the un-

der side of the head of semicircular form, which fits into a groove in the counter-sink part of the bolthole, as it is cast, to receive it, which not only prevents its turning, but also diminishes the liability of breakage at the corners of square holes; all which will more fully appear by reference to the drawing annexed to and forming part of this specification. We hereby declare, that what we claim as new, and of our invention, is the construction of such ploughs as aforesaid, and the several parts thereof, not separately, but in combination for the purposes aforesaid, viz.: 1st. The inclining the standard and landside so as to form an acute angle with the plane of the share. 2d. The placing the beam on a line parallel to the landside within the body of the plough, and its centre nearly in the perpendicular of the centre of resistance. 3d. The forming the top of the standard for brace and draft. We do not intend to confine our claim to any particular form or construction, excepting such form as may be necessary to place the beam in the perpendicular of the centre of resistance, and parallel to the landside; and also, to such form of the top of the standard, as shall serve for brace and draft, but have given such form, as we deem to be most convenient, which may be varied, as is obvious."

It was admitted at the trial, that the defendants' ploughs were exactly in all respects like those of the plaintiffs, except that the defendants did not in their ploughs extend back the top of the standard, or jog, in the manner stated in the specification, and described in the third part of the summing up of the invention.

It was contended by the counsel for the defendants, Dexter, Ruggles, and Allen, that as the defendants' plough did not embrace the whole combination, which the plaintiffs' plough did, and as the patent was for a combination only, there was no infringement of the plaintiffs' patent.

On the other hand, it was contended by the plaintiffs' counsel, Charles G. Loring and Gray, and Gleason, that the use of two parts of the combination, without embracing the third, was an infringement of the patent.

STORY, Circuit Justice. I am entirely satisfied, that the true construction of the present patent is, that it is a patent for a combination and for a combination only. The combination, as stated in the summing up, consists of three things; and it is as follows: "1st. The inclining the standard and landside so as to form an acute angle with the plane of the share. 2d. The placing the beam on a line parallel to the landside within the body of the plough, and its centre nearly in the perpendicular of the centre of resistance. 3d. The forming the top of the standard for brace and draft." Unless, then, it is proved, that the whole combination is substantially used in the ploughs of the defendants, it is not an infringement of the plaintiffs' patent, although one or more of the parts, as above specified, in the summing up in the patent, may be used in combination by the defendants. The plaintiffs' patent is for an entire combination of all the three things, and not for a combination of any two of them. A patent for a combination of A, B and C, cannot be technically or legally deemed at once a combination of A, B and C, and of A and B alone. I think, also, that the plaintiff, by the summing up in his patent, has treated the jogging of the standard behind, as well as the extension thereof to be essential parts of his combination, for the purpose of brace and draft; and not deemed either of them separately, and alone, and independent of the other. I deduce this from the language used in the third part of the summing up, which has a necessary reference to, and is explicable only by the antecedent descriptive part of the specification, as to the forming of the standard "for brace and draft." The language there used is as follows: "The top of the standard, through which the bolt passes to secure the beam, is transversely parallel to the plane of the share, and extends back from the bolt to such a distance as to form a brace to the beam, where the after part is pressed down by lifting at the forepart, the share being fast under a rock or other obstruction. The after part of this extension is squared in such a manner, that, being jogged into the beam, it relieves the bolt in heavy draft." If the reference had been direct and positive to the descriptive part of the specification in the summing up, as by adding after the words, "for brace and draft," the words "in the manner above mentioned," or "by the extension and jogging as aforementioned," there could be no doubt, in my judgment, that both were treated by the plaintiff in his patent as essential parts of his combination for the very purposes stated, viz. "for brace and draft." Now, it seems to me, that this is the necessary interpretation of the summing up, precisely as if the words had been actually used; and that it would not be intelligible without them. I regret, that this is the conclusion, to which my mind has arrived; but I cannot avoid it. I shall still more regret, that the cause should be decided upon this mere technical point, when, if the other points of defence, taken by the defendants' counsel, are made out by the proofs, there is an end of the cause, independently of this technical construction. For example, if it is established in proof, as the defendants' counsel insist, that they can establish, that the inclining of the standard and landside, so as to form an acute angle with the plane of the share has been long known before, (for the defendants certainly have a right to use, what was common before, and as far as it was common,) it will then amount only to this, that, as the defendants have not used the whole combination, but a part or parts only thereof, there

has been no infringement of the plaintiffs' patent. So, if there is, in fact, no such centre of resistance, as stated in the specification, or if the formulary for placing the beam will not place it parallel to that centre of resistance within the body of the plough, the same difficulty in maintaining the patent may arise. However, it is for the parties to say, whether they will proceed in the cause on these and the other points in controversy.

MEM. The defendants declined to proceed; and a verdict was taken for the defendants, with the understanding, that a bill of exceptions would be taken to the decision of the court for the purpose of a final decision in the supreme court. The cause was accordingly carried to the supreme court upon a bill of exceptions, and at January term, 1842, the judgment of the circuit court was affirmed. [16 Pet. (41 U. S.) 336.]

[NOTE. Upon the return of the mandate of the supreme court, an objection was taken by the plaintiffs to taxing the costs of witnesses who personally attended at the trial for their travel and attendance, they being more than one hundred miles from the place of trial. The objection was overruled. Case No. 11,447.]