TURRELL v. BRADFORD and others.

*(Circuit Court, S. D. New York.  March 22, 1883.)*

1. SUBCOMBINATION CLAIMS IMPORTED INTO REISSUES.
     Such claims are void, upon the principle declared in *Bantz* v. *Frantz*, 105 U.
     S. 160.
2. RIGHT OF REISSUE TO COVER SUCH CLAIMS LOST, BECAUSE OF UNREASONABLE
     DELAY, THE DEFENDANT NOT USING THE ENTIRE COMBINATION.
     These claims in the reissue for the subcombinations are void, being granted
     many years after date of the original patent, and after the invention of another
     device which did not use the entire combination—original claim—of that pat-
     ent, and when "the right to have the correction made" had been "aban-
     doned and lost by unreasonable delay."

*George C. Frelinghuysen*, for plaintiff.
*A. J. Todd*, for defendant.

SHIPMAN, J.  This is a bill in equity to restrain the defendants
from the alleged infringement of reissued letters patent, granted May
30, 1876, to the plaintiff, as assignee of the executors of John Lovatt,
for an improved skate.  The original patent was issued on May 29,
1860, to John Lovatt, as inventor, and was extended on May 28,
1874, to May 30, 1881.  Two intermediate reissues have been granted,
one on November 10, 1868, and the other on April 6, 1875.  The bill
was filed on January 30, 1880.  The defendants' skate is known as
the "Acme Club Skate."  It is described in letters patent to John Forbes
of July 2, 1867.  The Lovatt invention was a skate wherein the sole
clamps and heel clamps were securely fastened to the sole and heel by
the operation of one adjustable screw, whereas, previously, the mechan-
isms for sole clamps and heel clamps were separate and acted inde-
pendently of each other.  His skate has a pair of laterally-sliding sole
clamps and a pair of laterally-sliding heel clamps, which are oper-
ated by means of a screw moving longitudinally with reference to the
skate, and acting upon V-shaped grooves in such manner that "when
one pair of clamps closes upon the heel or sole, the clamp-operating
mechanism is not arrested in its movement, but is continued so as
to close the other pair of clamps."  This peculiarity is pointed out in
the specification of the original patent.  By the agency of the V-
shaped grooves, the longitudinal motion of the screw communicates a
lateral motion to the clamps.

The single claim of the original patent was "the combination of
the movable V-slotted blocks, E, E, with the clamps, D, D, D, D, and

the screw rod, G, when the same are arranged substantially in the manner and for the purpose herein set forth.

The four claims of the present reissue are as follows:

"(1) The combination, in a skate, of laterally-sliding clamps for grasping the sole, a plate or rest for the foot, and mechanism for moving and holding the clamps substantially as specified. (2) The combination, with the clamps for grasping the sole and clamps for grasping the heel, of mechanism acting between such clamps in opposite directions, so that one set of clamps acts as a resistance in closing the other set of clamps, substantially as set forth. (3) The combination, in a skate, of laterally-moving clamps, pins, inclined slots, and mechanism for operating and holding such clamps, substantially as set forth. (4) The combination, in a skate, of a plate or rest for the foot, laterally-sliding clamps, mechanism that moves and holds such clamps and transfers a longitudinal motion into a transverse motion, and clamps for grasping the heel, substantially as specified."

It will be perceived that the reissue divides the entire combination of the original claim into the various subcombinations which, it was believed, were shown in the specification and drawings of the original patent. The same construction was given to this reissue by Judge Nixon, (*Turrell* v. *Spaeth,* 14 O. G. 377.) The claim of the original patent was for the combination of the operative mechanism, viz., the screw and the blocks, or equivalent mechanism acting in substantially the described manner, with the two sets of the laterally-sliding clamps; and included, as a part of the mechanism, its method of action between the clamps, so that one set of clamps acted as a resistance in closing the other set of clamps, and it also included the transfer of a longitudinal into a transverse motion.

The first claim of the reissue omits the heel clamps. The second claim is for sole and heel clamps so combined with the described or equivalent mechanism for moving and holding these clamps that one set shall act as a resistance in closing the other set. The third claim is for laterally-sliding clamps, pins, inclined slots, and mechanism as described for operating such clamps. The laterally-sliding clamps of this claim were probably intended to include only one pair of clamps, whether sole or heel clamps, and by the mechanism was intended the mechanism to operate the pair of clamps which might be employed. If the claim should be construed so as to include both pair of laterally-sliding clamps, then it would also include the method of operation by which one set of clamps acted as a resistance in closing the other set.

The fourth claim is for a plate for the foot-rest, laterally-sliding clamps, and the described mechanism that moves and holds such

clamps and transfers a longitudinal into a transverse motion, and heel clamps for grasping the heel. It omits the requirement of the second claim.

The defendants' skate has laterally-sliding sole clamps, a longitudinally-sliding heel clamp in front of the heel, and fixed stops on the rear side of the heel-plate to hold the heel of the boot, both sets of sliding clamps being moved by one operation of a lever and an eccentrically pivoted cam. It is admitted that the skate does not infringe the second claim, because one set of clamps does not act as a resistance in closing the other set. Not having this peculiarity, this skate would not have infringed the original patent.

It may well be admitted that it infringes the first, third, and fourth claims, and that it may contain the respective subcombinations which are included therein, because those claims are void upon the principle declared in *Bantz* v. *Frantz*, 105 U. S. 160. The original patent was granted May 29, 1860. The first reissue was granted in 1868, the second in 1875, and the third and present reissue on May 30, 1876, 16 years after the patent was originally issued.

The defendant's skate was patented in 1867. Under the original patent those who did not use the entire combination, which included all the subcombinations mentioned in the reissue, were not infringers. These claims of the reissue are void, having been granted many years after the date of the original patent, and after the invention of another device which did not use the entire combination of that patent, and when "the right to have the correction made" had been "abandoned and lost by unreasonable delay." *Bantz* v. *Frantz*, 105 U. S. 160.

The bill is dismissed.