# IN RE LACROIX.

---

PATENTS; REISSUES; CLAIMS; ABANDONMENT.

1. Claims in an application for reissue are properly disallowed by the Patent Office, when the subject-matter of them is embraced in a subsequent and pending application by the same party, which is in interference, and the purpose of the applicant for reissue is apparently to gain an advantage over his opponent in the interference proceeding.

2. Where to give the words of a claim in an application for a reissue the meaning claimed for them by the applicant will require a strained and unnatural interpretation of the language used, or where such meaning, if given to the words, will refer to a new operation of the patented device, and so cover new matter, the claim is properly rejected.

3. Claims of a reissue application which are identical with claims of the original application which were canceled by the applicant in response to official objection to the same are properly disallowed as having been abandoned. (Following *Re Denton*, 12 App. D. C. 504.)

No. 410. Patent Appeals. Submitted January 14, 1908. Decided February 4, 1908.

HEARING on an appeal from a decision of the Commissioner
of Patents rejecting claims in an application for reissue of a
patent.                                          *Affirmed.*

The facts are stated in the opinion.

*Mr. James L. Norris, Mr. James L. Norris, Jr.,* and *Mr.
William G. Henderson* for the appellant.

*Mr. Webster S. Ruckman* for the Commissioner of Patents.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The appellant, Joseph D. Lacroix, obtained letters patent,
dated January 3, 1905, No. 779,368, on a cigar-bunch shaping
machine, application for which was filed December 11, 1901.
During the pendency of this application, and before the issu-
ance of letters patent, appellant, on October 10, 1902, filed in
the Patent Office another application, serial No. 126,739. This
application is still pending, and at present is involved in inter-
ference with two applications of one Oluf Tyberg, No. 53,211,
filed March 28, 1901, and No. 123,979, filed September 19,
1902. It will be observed that both of the Tyberg applications
antedate, in point of filing, the Lacroix application No. 126,-
739. On January 7, 1906, Lacroix filed an application for
reissue of letters patent on the machine on which letters patent
had been issued, claiming the right to have the application for
reissue, when allowed, relate back to the date of the original
application, December 11, 1901. In this application for reis-
sue, the first twenty-two claims are copies of the twenty-two
claims of the application which ripened into the original patent.
On July 7, 1906, the Commissioner of Patents finally refused,
among others, claims 23, 24, 25, 26, 27, 34, 35, 37, and 38 of
the application for reissue. These are the claims involved in
this appeal, and are as follows:

"23. In a cigar machine of the class set forth, the combina-
tion of means for supporting a plurality of bunches, and means

for removing and transferring the bunches to a distance from the supporting means.

"24. In a cigar machine of the class set forth, the combination of means for automatically disposing a bunch in a mold and for supporting the latter, and means for lifting the bunch from the mold and transferring it a distance from said mold.

"25. The combination with a bunch support operating to sustain a plurality of bunches, of a lifting device including means for engaging the bunches, and devices for operating the lifting device to remove the bunches and transport them from the support.

"26. The combination with means for supporting a mold having a plurality of bunch receptacles, of means for removing the bunches from said receptacles and transporting them from the mold.

"27. The combination with a bunch support, of bunch removing means, said means including a bunch impaling device, and means for operating said bunch removing means to transport the bunch from the support."

"34. A bunch shaping machine, provided with a bunch removing device having swinging and rocking arms provided with pins adjustable transversely in the arms, as set forth.

"35. A bunch shaping machine having a carrier provided with cups for containing bunches, and a bunch removing device for removing the bunches from said carrier, said removing device comprising arms mounted to swing up and down and to slide toward and from each other, and pins carried by said arms for engaging a bunch at the ends, the pins projecting into the bunch, as set forth."

"37. The combination with a bunch support operating to sustain a plurality of bunches, of mechanism for simultaneously removing the bunches from and transporting them from the support.

"38. The combination with a bunch support operating to sustain a plurality of bunches, of a lifting device including means for engaging each bunch, and devices for operating the

lifting device to remove the bunches from and transport them from the support."

It appears that the reissue was refused by the Commissioner because the aforesaid claims cannot be read upon the original disclosure, except by strained, unnatural, and improper interpretation of their terms. Quoting from the opinion of the Examiner: "The patent No. 779,368, of January 3, 1905, granted on an application filed December 11, 1901, which applicant now desires to reissue, contains, broadly stated, the following coacting elements:

"A circular shaper or mold having a series of cups on its periphery, designed to receive cigar bunches, and provided with movable covers, the whole revolving in a closed, heated compartment.

"A feed-carriage which takes a cigar bunch placed therein, and, through coacting mechanism, deposits it in an uncovered cup.

"Bunch trimming mechanism.

"Cover lifting and transferring mechanism.

"A bunch removing device consisting of oppositely curved arms having opposed impaling pins at their ends constructed to move inwardly and penetrate the ends of an uncovered cigar bunch, and lift it a short distance from the circular mold, in which position it can be 'taken hold of by the operator or carried off by suitable mechanism.' * * * At the time this patent was issued there was pending in the Office another application, serial No. 126,739, filed by applicant October 10, 1902, showing and claiming a device which removes bunches, separately from a series of cups mounted on a flexible carrier, and which transfers them to a wrapping mechanism." The distinctive feature of all the machines involved in this inquiry is the device for removing the bunches from the molds. The devices in the Lacroix machines are capable of removing but one bunch at a time, while the Tyberg mechanism is so constructed that all the bunches are removed at one time, or simultaneously, as stated in the specification.

It is sought by appellant to secure a reissue of his original patent upon claims that will not only dispose of the interference

between the claims of his pending application and the Tyberg claims, but will operate to make the claims in the application for reissue prior to the claims set forth in the Tyberg applications. It appears that the first twenty-two claims of the Lacroix application for reissue are exact copies of the twenty-two claims of the original patent. Quoting from the opinion of the Examiner: "These claims (referring to the twenty-two) relate to specific novel features of the device, embracing especially the feed-carriage mechanism, the bunch shaper or carrier, the cover transferring mechanism, and the bunch trimming devices, claimed either separately or in combination. In claims 7 and 11 the bunch removing device is claimed broadly in combination with other novel elements, but no claim appears in the patent, either broadly or specifically, covering the bunch removing mechanism as a separate feature, nor is it anywhere in the specification or claims of the patent referred to as a bunch transferring or a bunch transporting device." This describes briefly the original Lacroix machine and the claims upon which letters patent were issued. It must be remembered that in this machine the device for removing the bunch has only a perpendicular, and no lateral, motion. It lifts the bunch a short distance above the mold, where it is claimed "it can be taken hold of by the operator, or carried off by suitable mechanism." This machine, for which patent was issued, discloses no mechanism of any description whatever for carrying off the bunch. The only means disclosed for receiving the bunch when lifted from the mold is by the hand of the operator. It is contended by counsel for appellant that the mere adaptation of means for removing the bunch to any desired distance from the mold would involve only immaterial changes, but his patent does not disclose the nature of the changes, or how the adaptation can be accomplished.

Appellant's later application goes further, and discloses not only a wrapping mechanism, but a means of transferring the bunch from the mold to the wrapping device. In his second application, it is admitted that appellant has been held to be entitled to the claims here under consideration, and they have

been included in the interference with Tyberg. We think, therefore, that claims 23, 24, 25, 26, 27, and 38, were properly disallowed in the 'application for reissue, as they are embraced in appellant's subsequent application now in interference, and seem to be proper claims in that application, inasmuch, as that machine discloses a device for removing and transferring the bunch from the mold to a mechanism for wrapping the bunch, which operates clearly as a transference of the bunch by a mechanical device from one part of the machine to another and depositing it in the wrapping device which is the next succeeding step in the process of manufacture. This application, however, is now involved in an interference proceeding, which is not before us, and as to the rights of the parties thereto we are not expressing any opinion. In the interference proceeding the rights of the appellant can be protected, as the issue involved properly belongs to that application, and not to the original application upon which the letters patent were issued. We can view this application for reissue in no other light than as an attempt on the part of the appellant, by means of this reissue proceeding, to extract certain claims from the pending application, and so weave them into his original application as to dispose of the interference, and possibly gain thereby an unjust priority over Tyberg. As was said in *Miller* v. *Bridgeport Brass Co.* 104 U. S. 350, 26 L. ed. 783 : "It will not do for the patentee to wait until other inventors have produced new forms of improvement, and then, with the new light thus acquired, under pretense of inadvertence and mistake, apply for such an enlargement of his claim as to make it embrace these new forms. Such a process of expansion carried on indefinitely, without regard to lapse of time, would operate most unjustly against the public, and is totally unauthorized by the law. In such a case, even he who has rights, and sleeps upon them, justly loses them."

Claim 37, which relates to "mechanism for simultaneously removing the bunches from and transporting them over the support," is the principal issue in the interference between the second application of Lacroix and the applications of Tyberg. It is not contended that either of the Lacroix machines contains

a mechanism or device that will lift or transfer from the molds more than one bunch at a single movement, while the Tyberg machine discloses a mechanism whereby the bunches from all the molds are removed and transferred by a single movement of the transporting device. It is not apparent just how this appellant can assert a claim to a device for simultaneously removing and transporting the bunches, when neither of his machines is capable of removing more than a single bunch at a time, and the machine for which a reissue of letters patent is sought discloses only a removing, and not a transporting, device. On this point we agree with the Commissioner of Patents where, in his opinion, he says: "Appellant states that the means for 'removing' the bunches is found in the needles which penetrate the ends of the bunch while it is in the mold, and that the means for 'transferring' or 'transporting' the bunch from a mold or support is found in the pivoted arms on the ends of which the needles are mounted. Upon reading this language in connection with the construction to which it refers, the conclusion cannot be avoided that this interpretation of the language is strained, unnatural, and improper. The needles cannot properly be referred to as means for 'removing,' because they, in themselves, cannot remove the bunches from the mold. To do this the pivoted arms on which they are mounted must be removed; the arms must be considered a part of the 'removing' means. Nor can the language be considered as properly used even if the arms and needles together be considered as the removing and transferring means, when it is considered that the arms move only through a small arc of a circle, and do not deliver the bunches to any other disclosed mechanism, but simply lift them out of the molds. If the language used refers only to the mechanism now disclosed, it is objectionable as being inapt and misleading, and the claims including it should not be allowed; if it refers to any other operation,—for example, that disclosed in appellant's later application,—it covers new matter, and for this reason the claims including it should not be allowed."

Claims 34 and 35 were first presented as claims 35 and 37

by the appellant in the application for the patent for which he now seeks a reissue. They were canceled from that application in response to an official objection to the same. Quoting from appellant's brief: "Applicant concedes that, ordinarily, claims deliberately canceled in view of references cited cannot be reinstated in an application for reissue, but submits that, if at the time they are canceled, applicant has another application pending in which the claims could be made, it is permissible, under a reissue application, to reinstate them in the original case,—especially if the second filed or copending application has not eventuated in a grant of a patent when the reissue application is filed, and the latter is filed without unreasonable delay." The law is settled that the deliberate cancelation of claims from an application for patent precludes their assertion in a reissue. In *Corbin Cabinet Lock Co.* v. *Eagle Lock Co.* 150 U. S. 38, 37 L. ed. 989, 14 Sup. Ct. Rep. 28, it was said: "It is also settled by the authorities that, in applications for reissue, the patentee is not allowed to incorporate or secure claims covering or embracing what had been previously rejected upon his original application." *Bantz* v. *Frantz,* 105 U. S. 160, 26 L. ed. 1013; *Heald* v. *Rice,* 104 U. S. 737, 26 L. ed. 910; *James* v. *Campbell,* 104 U. S. 356, 26 L. ed. 786; *Topliff* v. *Topliff,* 145 U. S. 156, 36 L. ed. 658, 12 Sup. Ct. Rep. 825. In *Dobson* v. *Lees,* 137 U. S. 258, 34 L. ed. 652, 11 Sup. Ct. Rep. 71, the court said: "A reissue is an amendment, and cannot be allowed unless the imperfections in the original patent arose without fraud, and from inadvertence, accident, or mistake. Rev. Stat. sec. 4916, U. S. Comp. Stat. 1901, p. 3393. Hence the reissue cannot be permitted to enlarge the claims of the original patent by including matter once intentionally omitted. Acquiescence in the rejection of a claim; its withdrawal by amendment, either to save the application, or to escape an interference; the acceptance of a patent containing limitations imposed by the Patent Office, which narrow the scope of the invention as at first described and claimed,—are instances of such omission."

This principle, so frequently announced by the Supreme

Court, was followed by this court in passing upon an appeal from the Patent Office in *Re Denton,* 12 App. D. C. 504, where it was said: "It may be that it was a mistake on the part of the applicant to limit the invention to the extent only of the claim contained in the specification annexed to the patent; but with this, of course, we have nothing to do here. The only question for us is whether the claim now put forward on his behalf was so far contained in his original claims that were abandoned by him as to be itself thereby necessarily abandoned. And this we must answer in the affirmative; for abandonment of the whole necessarily implies and involves the abandonment of all the parts except such as are expressly and specifically retained." In this case, unlike the case at bar, the claim sought in the reissue was not as broad as the original claim, but the court held that this was of no consequence. Where the claim was abandoned, even though through the mistake of the applicant, it must be considered as abandoned, and, as the court said: "There can be no middle ground. There can be no retrogression to take back part of what has been abandoned, any more than to take back the whole."

In this case, claims 34 and 35 of the reissue application are exactly the same as the original claims that were abandoned in the former application that ripened into a patent. In the face of these decisions and the settled law on this point, further discussion or consideration is unnecessary.

The decision of the Commissioner of Patents is affirmed, and the clerk will certify the proceedings of this court as required by law.                                                              *Affirmed.*