# HOSKIN v. FISHER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

No. 169. Argued February 7, 1888.—Decided March 19, 1888.

Claims 2 and 3 of reissued letters patent No. 8876, granted to Frank H. Fisher September 2, 1879, on an application filed March 29, 1879, for an "improvement in hydraulic mining apparatus," the original patent No. 110,222, having been granted to Fisher December 20, 1870, namely, "2. A ball-and-socket joint for connecting the discharge pipe of a hydraulic mining apparatus with the end of a swivel section, B, substantially as above described. 3. The discharge pipe, E, having a semi-cylindrical or ball-shaped enlargement at its base, in combination with a corresponding cup-shaped socket, D, on the end of the horizontally swivelling section, B, substantially as, and for the purpose described," are invalid.

A copy of the original patent being found in the record under a proper certificate from the clerk of the court below, and there being a stipulation under which it might have been introduced in evidence from the proceedings in another case, it is to be considered, although there is no separate memorandum of its introduction in evidence.

There was a first reissue of the patent, granted as No. 5193, December 17, 1872, but no copy of it being found in the record, it cannot be presumed that claims 2 and 3 of the second reissue were found in the first reissue.

The plaintiffs having stated in their bill that the first reissue or a copy of it was ready in court to be produced, it was for them to put it in evidence, if they desired to excuse the delay of more than eight years and three months in applying for the second reissue by showing that the first reissue, granted a little less than two years after the date of the original patent, contained claims 2 and 3 of the second reissue.

The question of such delay is to be considered as if there never had been any first reissue.

Claims 2 and 3 of the second reissue being claims to sub-combinations less than the whole combination covered by the single claim of the original patent, and the descriptive parts and drawings of the two specifications being alike, and it not being indicated in the original that the invention consisted in anything less than a combination of all the elements embraced in such single claim, and the delay not being explained, such claims were unlawful expansions of the original patent.

BILL IN EQUITY. Decree for complainants. Respondents appealed. The case is stated in the opinion of the court.

*Mr. M. A. Wheaton* for appellants.

*Mr. John H. Miller* for appellees. *Mr. J. P. Langhorne* was with him on the brief.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the District of California, by Frank H. Fisher and Joshua Hendy against Richard Hoskin and others, for the infringement of reissued letters patent No. 8876, granted to Frank H. Fisher, September 2, 1879, on an application filed March 29, 1879, for an "improvement in hydraulic mining apparatus," the original patent, No. 110,222, having been granted to Fisher, December 20, 1870. This reissue was a second reissue, and it appears that there was a first reissue, No. 5193, dated December 17, 1872, granted on the surrender of the original patent, and that the second reissue was granted on the surrender of the first reissue.

The bill of complaint sets forth the fact of the surrender of the original patent and the granting of the first reissue, and that the first reissued patent is "ready in court to be produced", by the plaintiffs, "or a duly authenticated copy thereof." The bill also sets forth that the second reissue "was issued for the same invention as that described in the original letters patent."

There was only one claim in the original patent, as follows: "The swivel-jointed nozzle and pipes A B D E, combined, as described, with the lever F, working through slotted post *f*, strap *i*, lever *c*, and pawl and racket *j k*, for the purpose specified."

The second reissue contains three claims, as follows: 1. The swivel-jointed sections A B and ball-and-socket-jointed section D E, combined, as described, with the lever F, working through slotted posts *f*, strap *i*, lever C, and pawl and ratchet *j* K, for the purpose set forth. 2. A ball-and-socket joint for connecting the discharge-pipe of a hydraulic mining apparatus with the end of a swivel section, B, substantially

as above described. 3. The discharge-pipe E, having a semi-cylindrical or ball-shaped enlargement at its base, in combination with a corresponding cup-shaped socket, D, on the end of the horizontally-swivelling section B, substantially as and for the purpose described."

The claim of the original patent and the first claim of the second reissue are substantially alike. It is not alleged that the defendants have infringed the first claim of the second reissue, or that their apparatus would have infringed the claim of the original patent. The contention is that they have infringed claims 2 and 3 of the second reissue.

The answer sets up that the second reissue contains new matter, which was not contained in the original patent, and which describes and claims that of which Fisher "was not the inventor;" that Fisher did not discover or invent or make any hydraulic machine which machine or combination included either a ball-and-socket joint, or ball-and-socket-jointed sections, or a discharge-pipe having a ball-shaped enlargement at its base; that his original patent did not contain any description of either of those devices, and did not claim them in any combination or otherwise; that all that is said in the second reissue about a ball-and-socket-jointed section, and ball-and-socket joints, and a discharge-pipe with a ball-shaped enlargement at its base, is new matter, which was not contained in the original patent, and was inserted in the second reissue by Fisher fraudulently and for the sake of deceiving and misleading the public, he well knowing that no part of it was his invention, and also knowing that it was not contained in the original patent; and that, by reason of such fraudulent insertion of such new matter, the second reissue is void.

Issue was joined and proofs were taken on both sides, and, on the 17th of March, 1882, the case having been heard by the Circuit Judge, an interlocutory decree was entered in favor of the plaintiffs, adjudging the second reissue to be valid, and that the defendants had infringed upon the 2d and 3d claims of it, and awarding a decree to the plaintiffs for profits and damages, and ordering a reference to a master to ascertain them, and a perpetual injunction in regard to the

second and third claims.  Afterward, a rehearing was ordered by the Circuit Judge, to be had upon the same testimony. The rehearing was had before the Circuit Justice and the Circuit Judge, and, on the 4th of September, 1882, an interlocutory decree was entered in the same terms as the first interlocutory decree.  On the report of the master, a final decree was entered, March 7, 1884, awarding to the plaintiffs a sum of money as profits derived by the defendants from the infringement.

It is to be gathered from the record that Fisher had at some time brought a suit against one or both of the present defendants named Craig, for the infringement of the first reissue, and at the commencement of the taking of evidence on the part of the plaintiffs in the present suit, the following stipulation is found entered on the record: "It is stipulated and agreed by and between the counsel for the respective parties herein, that the evidence taken and on file in this court in the case of *Fisher* v. *Craig*, number 1144, shall be considered in evidence in this case, reserving, however, to each party the right to introduce such additional evidence as they may desire. It is further agreed, that, in case any exhibits introduced in evidence in said case of *Fisher* v. *Craig* shall be missing from the files, the same may be supplied, each party supplying his own exhibits."  It does not appear by the record, to what extent the evidence taken and on file in the same court in the case of *Fisher* v. *Craig*, thus referred to, was used on the hearing of the present case.  There is found in the record a paper marked "Exhibit No. 5," being a certified copy from the Patent Office, certified March 8, 1873, of the original patent granted to Fisher, with its specification and drawings.  There is no separate memorandum in the record of the introduction of this original patent in evidence; but, as it is found in the record, under a certificate of the clerk of the Circuit Court that it is a part of the record and of the proceedings in the cause, we must accept it as such, and, if necessary, assume it to have been a part of the evidence taken and on file in the case of *Fisher* v. *Craig*, and covered by the stipulation above referred to.  That stipulation was to the effect that the evi-

dence in *Fisher* v. *Craig* should " be considered in evidence in this case."

The first reissue is not found in the record. The plaintiffs do not appear to have put it in evidence, although the bill avers that it is ready in court to be produced by them, or a duly authenticated copy of it. Nor does it appear that the defendants put it in evidence, although, as the suit of *Fisher* v. *Craig* was founded upon it, it is to be inferred that it must have been part of the evidence taken and on file in that case, and which, by the stipulation, was to be considered in evidence in this case. Nevertheless, neither party has brought it before us.

The plaintiffs contend, that, in order to determine the validity of the second reissue, that must be compared with the first reissue, on the surrender of which it was granted; that, in the absence of the first reissue no such comparison can be made; that, therefore, it must be presumed that the first reissue and the second reissue were both for the same invention; and that it must also be presumed that the second and third claims of the second reissue were contained in the first reissue. But we are of opinion that, the original patent and the second reissue being properly before us, we have a right to compare them with each other, and that, upon such comparison, the question of the validity of the second reissue must be determined.

Under the proffer in the bill of complaint, it was for the plaintiffs to introduce the first reissue in evidence; and, if they desired to show an excuse for the delay of more than eight years and three months after the granting of the original patent in applying for the second reissue, by showing that the first reissue, granted a little less than two years after the date of the original patent, contained substantially claims 2 and 3 of the second reissue, they should have affirmatively made good that excuse, by themselves introducing the first reissue in evidence, or bringing it before us in the record as a part of the evidence taken and on file in the case of *Fisher* v. *Craig*.

Under the allegations contained in the answer that the original patent did not claim the devices covered by the 2d and 3d claims of the second reissue, and that said 2d and 3d claims

are new matter, not contained in the original patent, and that the second reissue is void by reason of such new matter, the question is fairly raised, on the face of the original patent and the second reissue, as to the effect of the delay of more than eight years and three months after the date of the original patent in applying for the second reissue, the case standing, for the purpose of such comparison, as if there never had been any first reissue.

In the case of *Wollensak* v. *Reiher*, 115 U. S. 96, the following propositions were laid down by this court: (1) The question whether delay in applying for a reissue of a patent has been reasonable or unreasonable is a question of law for the determination of the court. (2) The action of the Patent Office in granting a reissue, and deciding that, from special circumstances shown, it appeared that the applicant had not been guilty of laches in applying for it, is not sufficient to explain a delay in the application which otherwise appears unreasonable and to constitute laches. (3) Where a reissue expands the claims of the original patent, and it appears that there was a delay of two years, or more, in applying for it, the delay invalidates the reissue, unless accounted for and shown to be reasonable. These principles are applicable to the present case, and require that the decree of the Circuit Court should be reversed. The delay is not accounted for by the plaintiffs, nor shown to be reasonable.

The descriptive parts of the specifications of the original patent and the second reissue are substantially alike, and the drawings of the two are the same; but claims 2 and 3 of the second reissue are not found in the original patent. The claim in that patent to the swivel-jointed nozzle and pipes A B D E, combined with the other parts of the machine, and to nothing else, was, under the decisions of this court, an abandonment and dedication to the public of sub-combinations less than the whole combination, after an unexplained delay such as that in the present case. The 2d and 3d claims of the second reissue are claims to such sub-combinations. It was not indicated in the specification of the original patent that Fisher considered his invention as consisting in anything less

than a combination of all the elements embraced in the combination claimed in that patent.

In the recent case of *Parker & Whipple Co.* v. *Yale Clock Co.*, 123 U. S. 87, it was held that what was suggested or indicated in the original specification, drawings, or Patent Office model, is not to be considered as a part of the invention intended to have been covered by the original patent, unless it can be seen from a comparison of the original and the reissued patents, that the invention which the original patent was intended to cover embraced the things thus suggested or indicated in the original specification, drawings, or Patent Office model, and unless the original specification indicated that those things were embraced in the invention intended to have been secured by the original patent; and that, where it did not appear that any attempt had been made to secure by the original patent the inventions covered by the new claims in the reissue, those inventions must be regarded as having been abandoned or waived, so far as the reissue was concerned.

The plaintiffs contend that it appears from the testimony of Fisher that it was the result of the suit of *Fisher* v. *Craig*, brought on the first reissue, which convinced him that that reissue was inoperative, and that he took out the second reissue to remedy the defect in the first; and that the delay in taking out the second reissue is explained by the fact that the suit on the first reissue was pending. But we have not before us the proceedings in the suit of *Fisher* v. *Craig*, to such an extent as to be able to form any intelligent judgment upon the question as to how far the proceedings in that suit bear upon the question of the delay in taking out the second reissue. If the plaintiffs desired to avail themselves of those proceedings to show such excuse, it was their duty to have brought them before us, if they were a part of the evidence in this case under the stipulation above referred to. Although the defendants did not incorporate them in the record, and although the clerk of the court below, in making his return to this court, certifies that what is contained in the transcript is a "full, true, and correct copy of the record (excepting models), and of all proceedings in the above and therein entitled cause, and

that the same together constitute the transcript on appeal to the Supreme Court of the United States in said cause," such certificate being entitled in the present cause, it was perfectly competent for the plaintiffs to have brought before this court, and it was their duty to have done so, by *certiorari*, any necessary parts of the record which the defendants had omitted to bring before us.

The decree of the Circuit Court is

*Reversed, and the case is remanded to the Circuit Court for the Northern District of California, with a direction to dismiss the bill, with costs.*