Filed May 3, 1895.

* * *

No. 16,266. ·

LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY v. THE BODENSCHATZ, ETC., STONE COMPANY.

SPECIFIC PERFORMANCE.—*Mutual Covenants.—Contract Must be Enforceable Against Both Parties.*—A contract having mutual covenants to be performed by both parties can not be enforced by one party against the other, if the covenants to be performed by the former are so indefinite that a court of equity can not enforce them against him.

SAME.—*Sufficiency of Answer.*—In determining the sufficiency of an answer to a complaint for specific performance of a contract, it will be held sufficient if it presents such a state of facts as would render it inequitable to grant the relief prayed. If it shows that the plaintiff secured the contract by any sharp or unscrupulous practice; by overreaching, by not disclosing important facts, by trickery, by taking undue advantage of his position, or by any other means which are not conscientious, it will be sufficient.

SAME.—*Contract to Convey, Inability to do so, Defense.*—A contract to convey a certain tract of land to which the defendant has no title will not be enforced, on the ground that the defendant has no ability to comply with his contract.

Louisville, New Albany and Chicago R. W. Co. v. Bodenschatz.

SAME.—*What Contract Enforceable.—Power of Court to Enforce.—Must not be Oppressive or Unfair.*—In order to give a court jurisdiction to enforce the specific performance of a contract, it is necessary that it be complete and certain, as well as fair, just, and equal in all its parts, and that it be founded upon a valuable consideration. It must be capable of being specifically enforced, and be of a nature that the court can decree its complete performance against both parties without adding to its terms. It must appear that the plaintiff has no adequate remedy at law, and that a refusal to perform the contract would be a fraud upon him. The circumstances must be such that, when the court is called upon to act, its enforcement would not be hard or oppressive on the defendant.

SAME.—*Plaintiff to Perform in the Future.—Succession of Acts Requiring Protracted Supervision.*—When the consideration on the part of the plaintiff is the doing of something in the future, the performance of which the court can not compel, or when, by its terms, the contract stipulates for a succession of acts, the performance of which can not be consummated by one transaction, but will be continuous and require protracted supervision, specific performance will be refused.

SAME.—*Duties of Plaintiff Uncertain.—Contract on Plaintiff's Part not Specifically Stated.*—If the contract on the part of the plaintiff is not stated with clearness, and the part he is to perform is not clearly stated or ascertainable with completeness, it will not be enforced.

From the Monroe Circuit Court.

*E. C. Field* and *W. S. Kinnan*, for appellant.

*M. F. Dunn, J. E. Iglehart, E. Taylor* and *E. F. Runyan*, for appellees.

MONKS, J.—This was an action by appellant to enforce specific performance of a written contract. So much of the contract as is material to this controversy is as follows:

"This agreement, made and entered into this 10th day of March, 1890, by and between the Bodenschatz Stone Company, incorporated under the laws of the State of Illinois, parties of the first part, and the Louisville, New Albany and Chicago Railway Company, parties of the second part.

"Witnesseth, that whereas, said first party is desirous

of opening up a stone quarry near Bedford, Lawrence county, Indiana, removed from the main line of the railway track of the second party, and for this purpose is desirous of effecting connection between such quarry and said railway, by which stone can be carried by cars over and upon the line of railway of said second party, and said first party agrees to procure and have conveyed to said second party a right of way for railway purposes only from the point of connection with the right of way owned by said railway company to the said quarry, thereby vesting in said second party the perfect title to said right of way, which is agreed to be the following, to wit: * * * all being shown on attached plat, which is marked exhibit 'B.'

"Said first party further agrees to build said road bed and construct culverts and bridges, cattle guards, and also to do all necessary grading, both excavation and embankment, for the operation of said contemplated railroad free of cost to said second party, and said first party further agrees to be and become liable for all damage to land owners through which said line of road is built, and for all damages that may in any manner arise from such construction, either to owners of the land through which said first party obtains right of way, or to any party, company, person or persons, who are damaged, or may hereafter sustain damages on account of the construction of said switch or any part of said second party's right of way, except such only as may be incidental to the operation of the road by said second party and results therefrom, and in case any suit or suits are brought at any time for such damages as may result from such construction to any such land-owners, company or persons that said first party will defray all expenses which said second party may incur or become liable for in their behalf. And said second party having heretofore sub-

mitted plans and specifications and plat of proposed road to Fred Hall, chief engineer of said second party, setting forth the line of contemplated road and manner of construction, which have been heretofore by him approved, copies thereof are hereto attached and made a part of this agreement, and said first party hereby agrees to construct said road in strict compliance therewith. (said specifications and plat marked exhibit 'A and B.')

"Said second party hereby agrees that after the delivery of the deed or deeds, aforesaid, for right of way and the completion of the right of way, and the completion of the roadway and bridges, in compliance with the aforesaid plans and specifications to furnish the ties, railroad rail, and do the labor completing said track, at the expense of said first party, for which rail ties and other track material, and labor, said first party hereby agrees to pay said second party in cash upon the completion thereof and said second party agrees that said first party shall be reimbursed for the money so paid for labor, ties, rails and other track material, by thereafter receiving from said second party a rebate of one dollar ($1.00) per car on each and every loaded car passing into or out of said quarry and which is shipped from or to any station except Bedford and the saw mills at that place.

"And the said second party agrees that whenever the rebate shall amount to a sufficient sum to pay off the cost of said labor, rail, ties, and other track material, the rebate shall cease, and it will continue to furnish facilities for shipment of stone from said quarry.

"And said second party further agrees, that in case other quarries are opened up, by other parties, along the line thereof, or if the line shall be extended so as to embrace other quarries, before such party or parties shall be permitted to use such road, or any part thereof, such

party or parties shall pay to said second party such an amount, and in such terms, as compensation for money expended by said first party in the construction of said road as said second party, by its general manager or general superintendent, may consider reasonable and just, on the basis that such acquired interest, if any, shall be proportioned to the cost of said railway grade so jointly used, and said second party, on receipt of any and all money derived from this source, shall pay the same over to said first party."

The amended complaint is based upon the above contract, and alleges, in substance, that after the date of said written agreement, and in express performance thereof, the defendant stone company procured from the land owners, whose property lies between the point of connection of said proposed switch and the quarry of said stone company, conveyances of the right of way for said proposed railroad; that the stone company then proceeded to grade, construct and complete the roadbed for such proposed switch upon the survey and plans of plaintiff's chief engineer; that afterwards, in June, 1890, said stone company notified the plaintiff that it had completed said roadbed ready for the superstructure, and requested the plaintiff to lay down the ties and rails on such graded roadbed, and complete said railroad from plaintiff's main line grade to said stone company's quarry; that before the plaintiff laid down the ties or rails upon such grade the stone company exhibited to plaintiff a form of deed purporting to convey said right of way with certain restrictions and covenants, which were contrary to said contract of March 10, 1890, to which restrictions and covenants the plaintiff objected, and refused to receive the same, as being contrary to said contract; that the stone company retained said conveyance and agreed that the objection of the plaintiff there-

to was proper and valid objection, and that it would execute a new deed for such right of way, and would omit such objectionable restrictions and conditions; that relying upon such promise the plaintiff purchased, shipped and laid down a large amount of the iron and track material, and entirely completed said switch railroad over the said right of way, making a continuous line of railroad from plaintiff's main track to said stone company's quarry; that the plaintiff expended a large sum of money for such ties, rails and labor, to wit: the sum of four thousand three hundred and twenty-one and $\frac{45}{100}$ dollars, for which sum plaintiff rendered a statement to said stone company, which, however, did not include the cost of survey or transportation of said track material; that on the 18th day of November, 1890, the stone company paid in advance to plaintiff said sum; that afterwards the plaintiff notified said stone company that it was ready to switch cars into and from said quarry, but said defendant said it was not ready, and shortly thereafter, on December 10, 1890, erected obstructions across said switch, a short distance from its connection with the main line of the plaintiff's railroad, and also took out the track, and dug a ditch across the right of way, and carried off some of the rails in such switch, so as to disconnect the said switch from the said main track of plaintiff's railroad, and refused to allow the plaintiff to make any use of said track, claimed that said switch belongs exclusively to said defendant as its own property, and that the plaintiff has no right or title to said switch, nor any right to operate the same or to run its trains upon the same, except as said defendant may choose to permit; that the defendant refuses to perform its covenants in said agreement or to procure and have conveyed to the plaintiff the right of way described therein, so as to vest a perfect title in the

plaintiff, but claims the exclusive title thereof to be in the defendant, and that the plaintiff has no right, title or interest therein, or any right whatever to operate the same; that the defendant, in disregard of the plaintiff's rights, has entered into an agreement with the Evansville and Richmond railroad company which owns and operates a line of railroad running east and west, and crossing the line of the plaintiff's railroad in the city of Bedford, Indiana, a short distance from defendant's quarry, and has bound itself in some manner to procure the right of way for, and construct a line of railroad from the main tracks of the Evansville and Richmond railroad to said switch, intersecting the same just outside the main right of way of plaintiff's railroad, and that the defendant has given the Evansville and Richmond railroad company the right to run its engines, cars and trains over said switch to and from the defendant's quarry situated thereon.

Plaintiff has in all things kept and performed the covenants obligatory upon it under said contract of March 10, 1890, and prays that the court adjudge that the plaintiff is the exclusive owner, in fee simple, of said right of way, and that said defendant be ordered to specifically perform said contract, and execute or cause to be executed and delivered to the plaintiff proper deed of conveyance, vesting in the plaintiff the perfect legal title to said right of way.

The appellee stone company answered in eleven paragraphs, the fourth, fifth, sixth and eighth of which were withdrawn at the trial. Demurrers were filed to each paragraph, and overruled, exceptions taken, reply filed. The court, by request, made a special finding and stated its conclusions of law thereon. Appellant excepted to the conclusions of law, and filed a motion

for a new trial, which was overruled and exceptions taken.

Appellant assigns as error here:

First. The court erred in overruling the separate demurrer to each paragraph separately of the answer.

Second. The court erred in its conclusions of law on the findings.

Third. The court erred in overruling appellant's motion for judgment on the special finding of facts.

Fourth. The court erred in stating its conclusions of law on the findings.

Fifth. The court erred in overruling appellant's motion for a new trial.

The first error complained of is overruling the demurrer to the third, fourth and one-half, ninth, tenth and eleventh paragraphs of answer of the stone company.

It will not be necessary to consider the tenth paragraph of answer, for the reason that the special finding as to that paragraph was in favor of appellant, and the error, if any was committed by the court below in overruling the demurrer thereto, was harmless. *Walling* v. *Burgess*, 122 Ind. 299.

In determining the sufficiency of the paragraphs of answer in this case, it being a suit in equity to compel the execution of a deed, it is only required that we consider whether the answer presents such a state of facts as would render it inequitable to grant the relief prayed for. Story Eq., sections 769, 770; 3 Pom. Eq., p. 2164, note 1, and section 1404 and note. *Ikerd* v. *Beavers*, 106 Ind. 483.

The facts alleged in the third paragraph of answer of the stone company, in substance, are, that the said defendant and its agents were strangers in Lawrence county, Indiana, where said stone quarry of plaintiff was situated, and not acquainted with its geography and topography

and were unskilled and unfamiliar with the art of civil
engineering and with the mode and manner of construct-
ing railroads and railway grades, and that the defendant
was also ignorant of the terms and conditions of any and
all contracts then in existence between the plaintiff and
the Evansville and Richmond Railroad Company, all of
which ignorance, want of knowledge and unskillfulness
aforesaid was well known to the plaintiff; that the plaint-
iff's officers and agents at said town were thoroughly fa-
miliar with the geography and topography of said
county and were thoroughly informed as to the manner
and mode of constructing railroads and grades, and its
officers and agents were skilled in civil engineering and
that the plaintiff and its officers and agents well knew
and had full and complete information of the terms and
conditions of all existing contracts between it and the
said Evansville and Richmond Railroad Company; that
the plaintiff, to induce this defendant to enter into the
contract sued upon, through its agents and civil engineer
falsely and fraudulently represented to this defendant
before the execution of said pretended contract; that the
character of the ground lying adjacent to the defendant's
stone quarry, named in the complaint, was such by
reason of hills and hollows that it would be impossible
to construct a switch from said quarry over any other
line than the one in complaint described so as to connect
with any other railroad than the plaintiff's; that this de-
fendant at this time was contemplating a railroad
switch from its quarry so as to connect with the main
line of the Evansville and Richmond Railroad, which
fact was well known to the plaintiff; that there was a
feasible and practicable route for said switch from said
quarry to said last named railroad, and this fact was
well known to the plaintiff and its agents, said civil en-
gineer, and of which fact this defendant and its agents

were ignorant; that the said Evansville and Richmond Railroad Company was a competing line at Bedford, Indiana, with the plaintiff for the transportation of stone, and that by the construction of such switch would have become a competitor with the plaintiff in the transportation of the product from defendant's quarry; that after said civil engineer represented that no feasible or practicable route could be found between said quarry and said Evansville and Richmond Railroad the defendant said it would have a line run to the Evansville and Richmond Railroad rather than submit to the terms proposed by plaintiff for the construction of said switch; that thereupon plaintiff, by its agent, the civil engineer, in order to mislead defendant and prevent defendant from discovering the falsehood of said representations as to the feasibility of the said line to the Evansville and Richmond Railroad, and in order to destroy competition in trade and traffic in the transportation of stone and to secure to the plaintiff a monopoly and the sole right to transport defendant's quarry product, falsely and fraudulently represented to the defendant that it would be useless to construct any switch from said quarry to the Evansville and Richmond Railroad or to attempt negotiations for the same, for the reason that said railroad was under written contract with the plaintiff not to haul or transport any stone from any of the quarries in the vicinity of Bedford and not to go into said quarries with its rolling stock; that all of said representations made by said plaintiff were false and known by plaintiff to be false at the time; that this defendant at the time was ignorant of the facts of said falseness and relied upon said representations and believed them to be true, and was thereby induced to sign said contract; that when said defendant learned said representations were false it repudiated said contract by tearing up the

rails of the switch, as in the complaint mentioned, and notified the plaintiff thereof; that plaintiff paid for said quarry property and such right of way, as it now holds from said quarry to said plaintiff's railroad, the rails, iron and cross ties thereon, bolts and spikes, and paid for all the labor thereon done from its own funds.

Counsel for appellant urge that this paragraph is not sufficient in this: That there is no allegation that the appellant, by deceit or any unfair practice, or by any means whatever, attempted to, or did keep the said appellee from a complete investigation of the topography of the country around the stone quarry; that the means of this information were equally open to both parties to the contract. The demurrer admits the truth of the allegations in this paragraph.

The representation by appellant's civil engineer that a track can not be laid to a competing line from the appellee's quarry, was the statement of a fact and not the mere expression of an opinion; it was a material fact, which he, as a civil engineer knew, and from his calling was presumed to know, and which was unknown to the appellee. It was of vital importance to the appellee, because, if true, it must contract with and transport the product of its quarry over appellant's railroad.

The representation that appellant had a contract with the Evansville and Richmond Railroad Company, by the terms and conditions of which it could not enter the appellee's quarry or transport its quarry product, was a matter known only to the officers of the two railroad companies.

The statements alleged to have been made were concerning matters which were within the knowledge and under the control of appellant, and upon which, under the circumstances alleged, appellee had a right to rely. Appellant can not now complain that appellee

relied upon the representations and believed them to be true.

The authorities cited by appellant, to sustain its contention as to the third paragraph being actions for breach of contract or to rescind the same, are not in point.

The principle which controls in a case like this, is that beneficent and farreaching one, that he who seeks equity must do equity. By virtue of this principle, an answer to a complaint for specific performance is sufficient which shows, that the complainant has secured the agreement by any sharp or unscrupulous practices, by overreaching, by not disclosing important facts, by trickery, by taking undue advantage of his position, or by any other means which are not conscientious. 1 Story's Eq., section 769. *Ikerd* v. *Beavers, supra.*

The demurrer to the third paragraph was properly overruled.

Paragraph four and one-half of the answer avers, that contemporaneously with the execution of the contract set out in the complaint, the stone company procured from Dr. Gardner, owner of the land between said quarry and appellant's main line, a conveyance of the right of way over which the switch in question was built; that Gardner, when he conveyed the right of way, reserved the right to connect with switch from his quarries; that said stone company offered to convey the same title thus obtained; that plaintiff refused to receive a conveyance with said reservations and conditions, but demanded that it furnish a perfect title; that said stone company is not able to furnish any other title, although it has used every effort in its power to obtain a perfect one. This paragraph of answers shows that it is impossible for the stone company to convey a perfect title to said right of way as required by the contract and as demanded in the

complaint. It is therefore a good answer to a complaint, which demands a strict performance of the contract. If appellant was only asking to enforce the contract to the extent of the stone company's ability to convey, then such inability alone would not be a defense.

But if it were conceded that these and the remaining paragraphs were bad, there was no available error in overruling the demurrers to the same, unless there was a good complaint. *State, ex rel.*, v. *Myers*, 100 Ind. 487; *Reeves* v. *Howes*, 104 Ind. 435; *Ice* v. *Bale*, 102 Ind. 142.

Are the facts stated in the complaint sufficient to entitle appellant to specific performance? It is necessary, in order to give a court of equity jurisdiction to enforce specific performance of a contract, that the same be complete and certain as well as fair, just and equal in all its parts, and that it be founded on a valuable consideration. The contract must be capable of being specifically enforced, and be of a nature that the court can decree its complete performance against both parties without adding to its terms. It must appear that the plaintiff has no adequate remedy at law, and that a refusal to perform the contract would be a fraud upon him. The circumstances must be such, when the court is called upon to act, that its enforcement would not be hard or oppressive upon the defendant. Pomeroy Contracts, sections 145, 159, 162, 175; 1 Story Eq. Juris., sections 750a, 751; *Modisett* v. *Johnson*, 2 Blackf. 431; *Ikerd* v. *Beavers, supra; Seymour* v. *Delancey*, 6 Johns. Ch. 222; *Carberry* v. *Tannehill*, 1 Har. & Johns. (Md.) 224; 22 Am. and Eng. Encyc. of Law, p. 939, and note 2; *Marble Co.* v. *Ripley*, 10 Wall. 339; Waterman Contracts, sections 196, and note 1; 1 Story's Eq. Juris., section 736; *Atlanta, etc., R. R. Co.* v. *Speer*, 32 Ga. 550, 79 Am. Dec. 305; *Adderley* v. *Dixon*, 1 Sim. & St. 607.

The general rule is, when the consideration on the

part of the plaintiff is the doing of something in the future which the court can not compel, or when, by its terms, the contract stipulates for a succession of acts, whose performance can not be consummated by one transaction, but will be continuous and require protracted supervision, specific performance will be refused. Waterman Contracts, sections 49, 390; Pomeroy Contracts, sections 304, 307, 308, 312, note 5; *New South Wales, etc., R. W. Co.* v. *Wythes,* 1 K. & J. 186, *Waring* v. *Manchester, etc., R. W. Co.,* 7 Hare, 482; *Marble Co.* v. *Ripley,* 10 Wall. (U. S.) 339; *Port Clinton R. R. Co.* v. *Cleveland, etc., R. R. Co.,* 13 Ohio St. 544; *Atlanta, etc., R. R. Co.* v. *Speer, supra,* 550; *Cincinnati, etc., R. R. Co.* v. *Washburn,* 25 Ind. 259; *Columbus, etc., R. R. Co.* v. *Watson,* 26 Ind. 50; *Blanchard* v. *Detroit, etc., R. R. Co.,* 31 Mich. 43, 18 Am. Rep. 142; *Beck* v. *Allison,* 56 N. Y. 366.

In *Ikerd* v. *Beavers, supra;* MITCHELL, J., speaking for this court, said: "With respect to its essential elements, the qualities of completeness, certainty and fairness, the contract set out in the complaint does not present the requisites warranting a decree for specific performance. Courts can only proceed in cases like this when the parties have themselves agreed apon all the material and necessary details of their bargain. If any of these are omitted, or left obscure or undefined, so as to leave the intention of the parties uncertain respecting the substantial terms of the contract, the case is not one for specific performance. * * * Without supplying all its essential details, no court could so frame its decree as to afford any adequate protection to the defendant, nor can a judgment be entered which would be a final determination of the rights of all the parties. * * * Unless such an agreement has been substantially and fully performed by both parties, it ought not, in any

case, where compensation can be made, to be enforced. Such an agreement can not be said to be so fair, just and equal in its terms, as to be the subject of favor in a court of conscience.    *    *    *    Unless a contract can be specificially enforced as to both parties, a court will not interfere.''

So far as the rights of appellant are concerned they are protected by the conditions of the contract in the most rigid manner, and the duties of the stone company are stated with completeness and certainty, but when we seek to ascertain what is required of appellant we find those duties lie in the future, that there is no provision to secure their performance, and that they are not stated with completeness or certainty.

The object of the stone company was to secure transportation of the product of its quarry to the general market all over the country. To secure this to the stone company it was provided in the contract that appellant would repay said company the $4,321.45, by allowing a rebate of one dollar on each loaded car passing in or out of said quarry, and that when said sum was repaid in that manner, the rebate should cease and it would continue to furnish facilities for shipping stone from said quarry.

The statement of what appellant is to do could not well have been made in more obscure and uncertain language. No decree can be framed by which appellant can be compelled to comply with its covenant ''to furnish facilities for shipping stone,'' without adding to the terms of the contract and supplying essential details. This the court has no power to do.

The duties of appellant under the contract lie in the future and are continuous and successive, the performance of which can not be consummated by one transaction, but will require protracted supervision and direction,

and for this reason can not be enforced by a judicial decree.

The language of the court in *Atlanta, etc., R. R. Co. v. Speer, supra,* is pertinent in this case, the court said: "We are not asked to compel the plaintiffs in error to transport a particular article of freight now being on the platform awaiting transportation. We are asked to decree that they shall, in all future time, transport all freight and deliver it, as required by defendant in error in terms of the contract. It is evident that any such decree must be as general, and as indefinite in its terms as the contract itself. It can not be specific as to the kind of produce, the quantity, the time of performance; nor can it make a decree which will be satisfied by any specific act of performance. After decree * the case must be kept open, and if the defendant (in that decree) be contumacious, there must be action of the court to enforce it twenty, perhaps fifty times a year, for all time." The authorities heretofore cited are to the same effect.

It being impossible to execute the contract against appellant, specific performance thereof can not be enforced against appellee. For the reasons stated, the complaint is not sufficient, and the overruling of the demurrer to the answer is not available error. The complaint not being good it is not necessary to consider the other errors assigned, although the legal principles which render the complaint insufficient sustain the finding of facts, and the conclusion of law stated by the court below, and the judgment in favor of appellee rendered thereon.

We think it is clear, from a consideration of the whole case, that appellant is not entitled to the aid of a court of equity.

The judgment is therefore affirmed.

Filed Feb. 5, 1895; petition for rehearing overruled May 2, 1895.