**HEIDBRINK et al. v. CHARLES H. HARDESSEN CO.**

Circuit Court of Appeals, Seventh Circuit.
April 3, 1928.

No. 3919.

**1. Patents ☞136—Reissue patent can only be granted under statute prescribing conditions (35 USCA § 64).**

Reissue patent can only be granted by Commissioner of Patents under Rev. St. § 4916 (35 USCA § 64; Comp. St. § 9461), authorizing reissue when original patent is inoperative or invalid by reason of defective or insufficient specification, or by reason of patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention.

**2. Patents ☞136, 138(1)—Reissue cannot be granted to enlarge claim except for inadvertent mistake and on application within reasonably short time (35 USCA § 64).**

A patent cannot lawfully be reissued under Rev. St. § 4916 (35 USCA § 64; Comp. St. § 9461), for the purpose of enlarging the claim of the original patent unless there has been a clear mistake inadvertently committed in the wording of the claim, and unless application for reissue is made within a reasonably short period after the original patent was granted.

**3. Patents ☞138(1)—Lapse of four years and ten months between date of original patent and of reissue held unreasonable (35 USCA § 64).**

Lapse of four years and ten months between date of original patent and date of reissue taken out to enlarge claims of original patent held, unreasonable, and granting of reissue, under Rev. St. § 4916 (35 USCA § 64; Comp. § 9461), was therefore unauthorized.

**4. Patents ☞328—Reissue 15,873, claims 2-10, covering anæsthetic apparatus, held invalid (35 USCA § 64).**

Heidbrink reissue, No. 15,873, claims 2–10, replacing patent No. 1,309,686, covering anæsthetic apparatus, held invalid, under Rev. St. § 4916 (35 USCA § 64; Comp. St. § 9461), as attempting to enlarge claim of original patent and for delay in applying for reissue.

**5. Patents ☞136—Granting reissue held unauthorized, where original patent was adjudged invalid as functional in being deliberately and skillfully drafted to cover any means producing result (35 USCA § 64).**

Where original patent was adjudged invalid because functional, in that patentee deliberately and skillfully drafted claims to cover any means which any one might ever discover to produce same result, granting of reissue patent on theory of inadvertent mistake in describing invention was not authorized under Rev. St. § 4916 (35 USCA § 64; Comp. St. § 9461).

**6. Patents ☞328—Reissue No. 15,874, claims 1-7, covering anæsthetic apparatus, held invalid, and not infringed, if valid.**

Heidbrink reissue, No. 15,874, claims 1–7, covering anæsthetic apparatus, replacing patent No. 1,265,910, held invalid, and, in any event, not infringed, in view of prior act.

**7. Patents ☞312(1)—Burden of proof is on plaintiff suing to enjoin patent infringement.**

Plaintiff suing to enjoin infringement of patent has burden of proving his case and each and every essential element thereof.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Patent infringement suit by J. A. Heidbrink and another against the Charles H. Hardesseh Company. Decree for defendant, and plaintiffs appeal. Affirmed.

F. A. Whiteley, of Minneapolis, Minn., for appellants.

Geo. E. Kirk, of Toledo, Ohio, for appellee.

Before ALSCH^LER, EVANS, and PAGE, Circuit Ju_ ·.

EVAN A. EVANS, Circuit Judge. Appellants brought suit to enjoin infringement of two patents, the Heidbrink reissue patent, No. 15,873, issued July 22, 1924, and the Heidbrink reissue patent, No. 15,874, issued July 22, 1924. Each covers "anæsthetic apparatus." The first-named patent replaced patent No. 1,309,686, bearing date July 15, 1919, while the second replaced patent No. 1,265,910, dated May 4, 1918.

Appellee is a distributor. McKessen, the manufacturer of the infringing machine, is the real defendant.

A prior adjudication (Heidbrink v. McKessen [C. C. A.] 290 F. 665), is relied upon by appellee. This decision is advanced because, as appellee asserts, it is res adjudicata and because of its persuasiveness.

In the Ohio District Court suit was on the two original patents. The decree was for the defendant. On appeal, the decree was affirmed. The Court of Appeals held that patent No. 1,265,910 was void and the claims in issue of patent 1,309,686 were not infringed.

Heidbrink promptly applied to the Patent Office for reissue patents, which were granted. Appellants rely on claims 2 to 10

inclusive, of the first, and claims 1 to 7, inclusive, of the second, reissue patent.

Respecting the first reissue patent, it is significant that: (a) No court ever held the claims of the original patent invalid. (b) No court ever held the original patent inoperative. (c) No court ever held that patentee had claimed more than his invention permitted. (d) Appellants unsuccessfully endeavored to bring appellee within the language of the original patent. (e) From the date of the issue of appellants' original patent to the date of the reissue patent—four years ten months—appellee was engaged in the business of manufacturing and selling the alleged infringing machine. Its predecessor had invested large sums of money in its business. (f) Appellants during this entire period knew that appellee was so engaged in manufacturing and selling these machines. (g) The claims of appellants' reissue patent are broader than the claims of the original patent, and were broadened for the sole purpose of including appellee's machine.

[1] The conditions under which the Commissioner of Patents may grant a reissue patent are defined by the statute. R. S. § 4916, or section 9461, U. S. Compiled Statutes (35 USCA § 64).[1]

The Commissioner of Patents is not empowered to grant reissue patents except as authorized by this section. Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783; Mahn v. Harwood, 112 U. S. 354, 5 S. Ct. 174, 6 S. Ct. 451, 28 L. Ed. 665.

It is apparent from a reading of Judge Dennison's opinion that the original patent was neither invalid nor inoperative. With equal certainty it may be stated that no contention was made that the invalidity of the original patent was due to defective or insufficient specification or to patentee's "claim-

---

[1] U. S. Compiled Statutes, § 9461:
"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the Commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee, or, in the case of his death or of an assignment of the whole or any undivided part of the original patent, then to his executors, administrators, or assigns, for the unexpired part of the term of the original patent. Such surrender shall take effect upon the issue of the amended patent," etc.

ing as his own invention more than he had a right to claim." It is likewise apparent from the record that there was no error upon the part of the applicant traceable to inadvertence, accident or mistake which resulted in his securing claims which did not describe his invention.

We are unable to understand upon what theory the Patent Office proceeded in allowing this reissue patent.

[2-4] Even though the statutory requirements were met in other respects, which they were not, patentee's attempt to broaden his claims should, under the existing circumstances, have defeated his efforts to secure this reissue patent; for a patent cannot lawfully be reissued for the purpose of enlarging the claim unless (a) there has been a clear mistake inadvertently committed in the wording of the claim, and (b) the application for a reissue is made within a reasonably short period after the original patent was granted. Mahn v. Harwood, supra. The evidence fails to show a mistake inadvertently committed, and the application for a reissue patent was not made within a reasonable period after the grant of the original patent.

In the last-cited case, the court said:

"The granting of such reissues after the lapse of long periods of times is an abuse of the power, and is founded on a total misconception of the law. * * * Lapse of time may be of small consequence on an application for the reissue of a patent on account of a defective specification or description, or where the original claim is too broad. But there are substantial reasons, not applicable to these cases, why a claim cannot be enlarged and made broader after an undue lapse of time. The rights of the public here intervene, which are totally inconsistent with such tardy reissues; and the great opportunity and temptation to commit fraud after any considerable lapse of time, when the circumstances of the original application have passed out of mind, and the monopoly has proved to be of great value, make it imperative on the courts, as a dictate of justice and public policy, to hold the patentees strictly to the rule of reasonable diligence in making applications for this kind of reissues."

What is a reasonable time has been the subject of investigation in many cases. Such a period cannot be defined so as to fit all cases, for what is reasonable in one case may be unreasonable in another. Wollensak v. Sargent, 151 U. S. 221, 14 S. Ct. 291, 38 L. Ed. 137. We conclude that in the present case the lapse of more than four years from

the date of the original issuance of the patent was unreasonable. Hoskin v. Fisher, 125 U. S. 217, 8 S. Ct. 834, 31 L. Ed. 759; Wollensak v. Sargent, supra; Mahn v. Harwood, supra; Gardner v. Herz, 118 U. S. 180, 6 S. Ct. 1027, 30 L. Ed. 158; Miller v. Bruse Co., 104 Ill. 350; Bantz v. Frantz, 105 U. S. 160, 26 L. Ed. 1013; Flame Oil Stove Co. v. Glazier (C. C. A.) 119 F. 157; Thomson-Houston Electric Co. v. Sterling Meter Co. (C. C.) 150 F. 589.

Respecting the second reissue patent No. 15874, somewhat different questions arise.

[5, 6] Certain of the statutory requirements are present. To illustrate, certain claims of the original patent were declared void. Speaking of them, the court said (290 F. 669):

"With this statement of the situation, we come to his two claims of 1,265,910. We are compelled to think that they are invalid because functional. They are apparently most deliberately and skillfully drafted to cover any means which any one ever may discover of producing the result; that is, to accomplish the one thing while avoiding the other. We think they are clearly to be condemned under the rule stated in O'Reilly v. Morse, 15 How. 62, 112, 14 L. Ed. 601, Risdon v. Medart, 158 U. S. 68, 77, 15 S. Ct. 745, 39 L. Ed. 899, and the many familiar cases applying the rule, and that they are not within the principle of the Telephone Case, 126 U. S. 1, 534, 8 S. Ct. 778, 31 L. Ed. 863. We do not mean to say that a claim which in a very general way calls for means is necessarily functional and bad—quite the contrary (Davis v. New Departure Co. [C. C. A. 6] 217 F. 775, 782, 133 C. C. A. 505); nor would we hastily condemn, for this reason, a claim which, by its functional quality, only became equivalent to that valid process claim which the inventor might have obtained through another form of his application; but a claim to a process which attempted to define the process only by its result would be no less objectionable than is a corresponding claim to a machine."

For appellants, it is urged that this language justified the Patent Office in granting the reissue patent. In other words, it is contended that applicant, through inadvertence, accident, or mistake, misdescribed his invention, and should have been permitted, as the Patent Office ruled, to surrender his old patent and secure a new one. In opposition to this argument, it is at once apparent that the invalidity of the original patent was not because "of defective or insufficient specifications or by reason of the patentee's claim-

ing as his own invention more than he had a right to claim as new." Without such a showing, where is the basis for a valid reissue patent? Moreover, the error which resulted in the court's declaring the patent invalid did not arise "by inadvertence, accident or mistake" and was not "without a fraudulent or deceptive intention" on the part of the applicant.

Judge Dennison characterized these claims as having been "deliberately and skillfully drafted to cover any means which any one ever may discover of producing the result—that is, accomplishing the one thing while avoiding the other." Such language should have informed the Patent Office that there was no "inadvertence, accident or mistake" in drawing the original claims. If the applicant *deliberately* and *skillfully* drafted his claims so as to cover any means which any one ever may discover of producing the result, could it be said that his action was inadvertent or accidental? Accidental or inadvertent action cannot be predicated upon conduct properly characterized as deliberate or designed. Certainly, as between these two parties, who were also the parties before the Court of Appeals in the Sixth Circuit, this finding is well-nigh conclusive.

True, appellants, in the effort to cover any and all means which might, during the life of the patent, become available, came within the condemnation of the rule which defeated a claim which defined a means solely by its result or its function. Seeking too much, he lost all. Nevertheless, if he did so deliberately and intentionally and successfully, he can hardly be heard to say that he acted inadvertently, accidentally, or by mistake.

There is another ground upon which this portion of the decree must be affirmed. Judge Westenhaver, in his opinion in the District Court of Ohio, described the prior art as follows:

"This prior art, known to both inventors and on the basis of which each proceeded to construct his apparatus, discloses the following general elements of each of the five patents in controversy: (1) The mixing of nitrous oxid gas and oxygen to form an anesthetic in surgical operations; (2) elastic gas bags as separate containers for nitrous oxid gas and oxygen; (3) an intervening mixing chamber to which the gas from each bag is discharged and from which it passes to the patient; (4) valve mechanism controlling the flow of the separate gases from the bags to the mixing chamber by which a definite proportion of gases going into the mixing chamber can be secured, provided the pres-

sure within the elastic bags is kept constant; (5) check valves between the mixing chamber and the separate supply sources of nitrous oxid and oxygen; (6) an attachment directly connected with the apparatus for administering oxygen and nitrous oxid; (7) a vaporizer with a by-pass whereby chloroform or ether may be given with the gas mixture or without the gas mixture and can be entirely cut out at will. In addition thereto, plaintiffs assert and claim that this prior art shows forward of the mixing chamber a rebreathing bag; also means for varying the amount of rebreathing by the patient, and an electric light bulb in the mixing chamber for heating the mixture. This, however, depends, not upon patent disclosures, but upon evidence as to the prior practices already referred to, and is in dispute."

The two additions to this art which Heidbrink claims he made are (a) means for automatic control of the flow of gases to the patient while the patient is receiving the gas; and (b) means for definitely regulating and determining the volume of the flow of the mixture and increasing or decreasing the amount without changing the proportion of the gases or the quality of the mixture. ·

The evidence before the District Court was such as to justify a finding in favor of the defendant to the effect that appellants' machine did not permit of the volume of the flow of the mixture being increased or decreased without changing the proportion of the gases or the quality of the mixture. This was the basis of the allowance of the patent. [7] Upon the appellants rested the burden of proving their case and each and every essential element thereof. That it failed to show that its machine would permit of a change in the volume of the mixture without change in the proportion of the two gases is, we think, established by the evidence. Such evidence as was introduced on this issue established the contrary.

The decree is affirmed.