## AMERICAN STEEL FOUNDRIES v. LAUGHLIN et al.

Circuit Court of Appeals, Seventh Circuit. December 27, 1928.

No. 4052.

140

John M. Zane, Russell Whitman, and Whitman Taylor, all of Chicago, Ill., for appellant.

Joshua R. H. Potts and Eugene V. Clarke, both of Chicago, Ill., and George B. Parkinson and T. Bertram Humphries, both of Philadelphia, Pa., for appellees.

Before EVANS, PAGE, and ANDERSON, Circuit Judges,

EVAN A. EVANS, Circuit Judge. This appeal is from a decree dismissing appellant's suit on its merits after full hearing. The suit was to compel specific performance of an agreement by the terms of which appellees assigned a certain patent, No. 1,527,-418, covering "Methods and Apparatus for Hardening the Surface of Car Wheels," to appellant, and also agreed to join "in signing any lawful and proper application for such reissue at the request of the assignee or his representative." Appellant also asked the court to compel appellees to assign a certain pending application, No. 514,081 for a patent and to enjoin appellees from selling their invention described in their pending application and from executing any licenses thereunder. It also asked the court to compel appellees to disclose the complete official file wrapper content in application No. 514,-081 and disclose the amounts received from licenses as royalties, etc.

Appellant's position, briefly stated, is: That the application for the reissue patent tendered by it is for the same invention as that covered by patent 1,527,418, and which appellees assigned to appellant; that the reissue patent application is proper, because the failure to insert the broader claims was, in contemplation of law, due to inadvertence, accident, or mistake, and that the covenant to execute "any lawful and proper application for reissue" is sufficiently definite and certain to be enforceable in equity.

The District Judge found all issues of fact and law against appellant.

In the assignment referred to, appellees agreed "to join in signing any *lawful and proper* application for such reissue at the request of said assignee."

What are "lawful and proper" applications for a reissue?

The statute governs the reissue of patents. Heidbrink et al. v. Hardessen Co. (C. C. A.) 25 F.(2d) 8. Whatever may be the exact meaning of "lawful and proper" application, it cannot be argued that appellees were required to sign an application which obviously would be rejected by the Patent Office. Nor were they required to sign an application which necessitated a verification that could only be made by a false oath.

Section 9461, U. S. Compiled Statutes (35 USCA § 64), defines the circumstances and conditions under which a reissue patent may be granted. We quote a portion of the statute:

"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the Commissioner shall," etc.

The Commissioner of Patents may not grant a reissue patent excepting as this statute authorizes. Heidbrink v. Hardessen, supra. To secure a reissue patent, then, either the patent must be inoperative or invalid by reason of a defective or insufficient specification, or the patent be inoperative or invalid by reason of the patentee's claiming as his own invention or discovery more than he had a right to claim as new.

If a patentee may establish one or the other of these two grounds, and *further* show that the error "has arisen by inadvertence, accident, or mistake," he comes within the provisions of the statute. Otherwise he is not entitled to a reissue patent.

What does the statute require? Either error in the way of specifications; or error due to the patentee claiming as his own invention or discovery more than he had a right to claim as new. On any statement of appellant's case, there existed no basis for making a proper or valid application for a reissue patent.

The patent for which a reissue patent is sought was neither inoperative nor invalid. Certainly it was not invalid or inoperative by reason of a defective or insufficient specification.

With equal certainty it may be said that the patent is neither inoperative nor invalid "by reason of the patentee's claiming as his own invention or discovery *more* than he had a right to claim as new. Appellant's criticism is that the patentee's claims were too narrow rather than that he claimed too broadly. In other words, appellant contends that the claims are restricted to car wheels, whereas the process described might have been applicable to steel surfaces and not limited to car wheels. Consequently on neither ground can the plaintiff assert that his application for reissue is lawful and proper.

But a further condition is imposed by the statute, and it, too, is sufficient to defeat the application which appellant insists the inventor should sign. The statute, after designating the circumstances and conditions under which reissue patents may issue, attaches the further condition, "If the error has arisen by inadvertence, accident or mistake and without any fraudulent or deceptive intention." It is evident that the applicant for the patent did not commit an error through *inadvertence, accident, or mistake,* when he failed to insert a claim which he had inserted in a copending application made by him a few years previously.

In other words, if one who applies for broad claims covering a novel process later discovers a more restricted combination or process and applies for, and promptly secures, a patent for his narrower patent, he cannot thereafter assert that he omitted the broader claims in the second application through inadvertence, accident, or mistake. What he did, he did deliberately. And, having acted deliberately, he cannot thereafter assert that he acted inadvertently. Heidbrink et al. v. Hardessen, supra.

There is another objection to granting specific performance, so far as compelling signature to the application for a reissue is concerned. This was pointed out in the opinion of the District Judge when he said:

"The terms of a contract which is sought to be specifically executed should be so precise that neither party could reasonably misunderstand them. If the contract is vague or uncertain, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy. To entitle a party to specific performance of a contract it must be so certain and unambiguous in its terms and in all its parts that the court can require the specific thing contracted for to be done. Colson v. Thompson, 2 Wheat. 336, 341, 4 L. Ed. 253; Dalzell v. Dueber Watch-Case Mfg. Co., 149 U. S. 315, 13 S. Ct. 886, 37 L. Ed. 749; Threlkeld v. Inglett, 289 Ill. 90, 97, 98, 124 N. E. 368; Louisville, N. A. & C. Ry. Co. v. Bodenschatz-Bedford Stone Co., 141 Ind. 251, 39 N. E. 703. Nor will specific performance be granted in a case which calls for the supervision of the court, or where too great a burden is imposed upon the court and a degree of expert knowledge required which neither the court nor its officers can be expected to possess. Javierre v. Central Altagracia, 217 U. S. 502, 508, 30 S. Ct. 598, 54 L. Ed. 859; Louisville, N. A. & C. Ry. Co. v. Bodenschatz-Bedford Stone Co., supra.

"An examination of the multitude of claims which the court is asked to require defendants to adopt as the basis of an application for reissue shows that plaintiff has failed to make a showing for specific performance. The court is asked, not to aid in the correction of obvious defects, but to become a patent attorney and to formulate new claims which shall be for the same invention as the one covered by the old claims."

It is unnecessary for us to place our decision on this ground because of other sufficient reasons for denying appellant the relief sought. But certainly parties making contracts respecting the reissue of patents should agree with sufficient certainty and particularity as to make it possible for the court to clearly understand the agreement, and not compel it to act as arbitrator or patent solicitor for the consideration of claims to be drawn in the light of the language of the specifications.

Appellant also asks that the court compel the defendant to assign the application for patent which was pending when appellees sold patent No. 1,527,418.

We are at a loss to understand the basis for such relief. It is not contended that there was any agreement to assign this patent. It was never mentioned, contemplated, nor bargained for. Appellant did not even know of its existence.

But it is contended that, because appel-

lees did not speak of it when selling their other patent, they committed a fraud upon the appellant. Respecting this issue of fraud, the District Judge said:

"Much of this bill is framed as if it were for relief against the fraud of defendants in connection with the assignment. There are averments as to suppression of facts and conspiracy to extort money for the patent to be issued and insinuations of unprofessional conduct. Defendants, however, offer to repay the $5,000 if plaintiff will reassign the patent. Plaintiff rejects this tender, repudiates any design to seek a rescission, and adopts and stands on the contract. The allegations of fraud, therefore, seem to have no place in the case, except to give some kind of color to it. It is only fair to say, since that issue was injected into the case, that the allegations of fraud and unprofessional conduct against defendant Potts are wholly unsustained by proof."

Even were we to reject this finding (and the evidence does not warrant our doing so) appellant would not be entitled to an assignment of the previous application. Grant that fraud was committed; grant also that appellee should have informed appellant of the pending application for a broader patent covering the process for hardening steel surface; concede further that appellant had the right to rely upon appellee's silence and also that it was not required to rescind the contract when it discovered the fraud, but could pursue its other remedies; still we are unable to appreciate its basis for a suit to compel an assignment of the original patent.

When the fraud was discovered, and conceding it was actionable fraud, appellant had an election of remedies. It could rescind its contract, or it could ratify and sue upon the contract. Ordinarily, when pursuing the latter remedy, plaintiff brings an action at law for damages. But could plaintiff sue in equity, with the fraud in the sale of one patent as the basis of his suit, and secure an enforced assignment of another patent, not by the parties considered when the fraud was practiced? We think not.

Let us take a somewhat analogous situation which arises when the alleged fraud occurs in the sale of a tract of land. Assume that A has two tracts of land and sells one to B. In making the sale he shows the land, but does not disclose that he has another tract higher up from which he pours surface water upon the lower land. B, upon occupying the land, finds that its enjoyment is largely destroyed because of the use to which A puts his more elevated tract. If we assume there was actionable fraud in the negotiation which resulted in the sale of the lower tract from A to B, would the court, in a suit brought by B, compel A to transfer the other tract of land? Obviously not.

And where A obtains two patents, one a broad patent and the other an improvement patent, he may sell one without selling the other. If he sells one without revealing the fact that his broader application is pending in the Patent Office and soon to ripen into a patent, which patent, when granted, will dominate the one he sells, does he practice a fraud upon the vendee? If he does, may the vendee, when he discovers the fraud, secure a decree compelling the vendor to assign to him the broader patent? Again our answer to the last question must be "No."

Counsel should not become confused regarding the nature of the proceedings in the Patent Office which result in the issuance of a patent. The patent is a monopoly and the public is vitally interested in its grant. Procuring a reissue patent or securing a patent in the first instance is, in a certain limited sense, a proceeding in which the public is interested. Upon certain conditions, and under certain circumstances, the public, through the government, grants to the inventor a monopoly. The public may impose such conditions upon its issuance as may be deemed advisable. Neither the patent nor the reissue patent are obtainable as a matter of right, but are dependent solely upon congressional action for their allowance.

Appellant has approached the question upon the theory that in making an application for a reissue patent the controversy was one between appellant and appellees, whereas it involved the sufficiency and validity of an application as against the public.

But, as heretofore stated, if there was any basis for the relief sought on the facts disclosed, the finding of the judge that there was no fraud committed by the defendant, effectually destroys the basis for any relief.

Appellant finally argues that it is entitled to an assignment of appellee's pending application No. 514,081, because such pending application is for the same invention as was disclosed in the patent sold, No. 1,527,-418. If the fact hypothesis be accepted, then under well-settled law (Suffolk Co. v. Hayden, 3 Wall. 315, 18 L. Ed. 76; Miller v. Eagle Mfg. Co., 151 U. S. 196, 197, 14 S. Ct. 310, 38 L. Ed. 121) the first issued patent is the only valid patent.

Thus far in this discussion we have assumed that the specifications in patent No. 1,527,418 were sufficient to support the claims

to be found in the application for the reissue patent. An examination of the patent, however, does not support any such conclusion. In the first place, patentee expressly described his invention as being "for a method and apparatus for hardening the Surfaces of Car Wheels."

In the first paragraph of his specifications he says that he "has invented a new and useful improvement in method and apparatus for hardening the surface of car wheels." There are six claims. The first two start out with these words: "The Method of Hardening the Surfaces of Car Wheels." The last four claims start out with these words: "Apparatus for Hardening the Tread Surfaces of Car Wheels." In another portion of his specification, the applicant says:

"My invention relates to improvements in method and apparatus for hardening the surfaces of car wheels and has for its object the provision of an improved method and apparatus of this character by means of which the tread surfaces of car wheels may be made hard, tough and durable to resist wear while the interior of the wheel is substantially unaffected by the tempering process employed and remains tough and less brittle."

Speaking of the preferred form, he says:

"The preferred form of apparatus as illustrated in the drawings, comprises a pan-like vessel 3 having on its bottom an annular supporting rib or flange 4 adapted and arranged to support the car wheel 5 in said pan with a water space 6 surrounding the tread portions of the wheel."

Continuing he says:

"A suitable annealing plate 11 is arranged to rest upon the car wheel 5 during the tempering process and serves to cause slow and substantially uniform cooling of the interior or body portions of the wheel and thus prevents rendering the same brittle."

Again the patentee says:

"In carrying on the process, the car wheels are first heated for tempering in the usual manner and are placed in the vessel 3 with the annealing plate resting thereon. Then a supply of water is admitted to the space 6 through the valve 10 and permitted to overflow from the vessel 3. * * * This permits the tread portions of the wheel to reheat by conduction from the interior heat of the body of the wheel. This reheating of the tread surfaces is permitted for a period of about 10 seconds whereupon the tempering water is again supplied to the space 6 and permitted to flow until the body of the wheel is sufficiently cool. In this way the tread surfaces of the wheel will be suitably hardened to resist wear while the body portions thereof will remain tough, comparatively soft and therefore not brittle."

Turning now to some of the claims which appellant insists are the embodiment of the invention described in the specifications from which the above quotations have been taken, we find claim 12:

"A method of tempering a continuous surface of metal which includes subjecting a localized area to tempering fluid and then tempering the continuous surface so that the continuous surface is of differential hardness."

Claim 15 reads:

"The method of tempering a continuous surface of metal which includes subjecting a localized area to a tempering fluid, permitting reheating and then tempering the continuous surface so that a continuous surface is of differential hardness."

Claim 43 reads:

"As a new article of manufacture, a casting having a peripherally tempered belt whose width is of varying hardness and made by tempering at one operation."

One of the claims which appeared in the application No. 514,081 and which petitioner asks to have assigned, reads as follows:

"A method of treating the surfaces of steel objects of low carbon which consists in first heating the object to a temperature from 1650 to 2200 degrees F. inversely as to the carbon content; then immersing said object in a quenching fluid for a short time and until the surfaces of the same are materially chilled to the desired depth but the interior substantially unaffected; then removing the object from the quench and permitting the surface thereof to reheat by conduction to approximately 200 degrees F. below the temperature at the first quench; and then replacing the object in the quench and permitting the same to remain therein until the quenching is completed, substantially as described."

It is apparent from a reading of these claims and the specifications in the patent sold, that the Patent Office could not, and would not, grant the reissue patent sought.

The trial judge properly said: "Plaintiff has exactly what it paid for—the first patent on this invention as applied to car wheels."

The decree is affirmed.